## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 23-cv-00555-GPG-STV

MICHAEL SEXTON,

    Plaintiff,

v.

CITY OF COLORADO SPRINGS, COLORADO a municipality,
CHRISTINE SOMERSALMI, in his individual and official capacities,
EDDIE NASSAR, in his individual and official capacities,

    Defendants.

_____

## SCHEDULING ORDER
_____

### 1. DATE OF CONFERENCE

The Court has set a Scheduling/Planning Conference pursuant to Fed. R. Civ. P. 16(b) on May 1, 2024. Appearing for the parties are:

| | |
|---|---|
| Mari Newman | Anne H. Turner |
| Andy McNulty | Assistant City Attorney |
| NEWMAN \| MCNULTY LLC | City of Colorado Springs |
| 1490 N. Lafayette Street, Suite 304 | 30 S. Nevada Avenue, Suite 501 |
| Denver, CO 80218 | Colorado Springs, CO 80903 |
| Telephone: 720-850-5770 | (719) 385-5909 |
| Mari@Newman-McNulty.com | Anne.turner@coloradosprings.gov |
| Andy@Newman-McNulty.com | |

*Attorneys for Plaintiff*     *Attorney for Defendants*

### 2. STATEMENT OF JURISDICTION

This action arises under the Constitution and laws of the United States and is brought pursuant to Title 42 U.S.C. § 1983. It is also brought under Colorado state law,

C.R.S. § 13-21-131 — Colo. Const. Art. II, Section 7.[1] Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 and § 1367. Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988 and Colo. Rev. Stat. § 13-21-131(3).

Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All the events alleged herein occurred within the State of Colorado.

### 3.  STATEMENT OF CLAIMS AND DEFENSES

#### a.  Plaintiff's statement:[2]

In the early morning hours on April 2, 2021, Mr. Sexton and his wife, Jazzmen Lueders, were asleep in their van. The van was parked in a dirt lot between South Tejon Street and South Nevada Avenue, behind Natural Grocers. The lot contained no signage indicating it was a private lot. It did not have signage requesting that they public not enter, indicate that there was no parking there, or provide notice that there no camping at that site. In fact, the only sign on the property gave notice of a development proposal by the Colorado Springs Urban Planning Division for a subdivision plat.

Around 2:00 a.m., Defendant Somersalmi and Defendant Nassar arrived to the lot. Upon Defendants' arrival, both Mr. Sexton and Ms. Lueders began recording the interaction on their cellphones. Defendant Somersalmi knocked on the van's windows

---

[1] Plaintiff anticipates that he will seek to amend his pleadings to add a claim for exemplary damages pursuant to Colo. Rev. Stat. § 13-21-102, after disclosures have been exchanged and after he has established the existence of a triable issue of exemplary damages.

[2] The facts section of Plaintiff's Complaint and Jury Demand [Doc. 1] is hereby incorporated as if set forth fully herein.

and asked Mr. Sexton to exit the van. Mr. Sexton questioned her authority to even speak with him as there were no trespassing signs. Mr. Sexton also criticized Defendant Somersalmi's interpretation of the law and, because of his discomfort with how Defendant Somersalmi was escalating the situation, asked that Defendant Somersalmi call her supervisor before he exited the van.

In response to Mr. Sexton's reasonable request for Defendant Somersalmi to call her supervisor, Defendant Somersalmi told Mr. Sexton that she would break his windows and drag him out of his van. Mr. Sexton continuously replied that he, and Ms. Lueders, had not done anything wrong and asked to speak with Defendant Somersalmi's supervisor. After a few minutes of back-and-forth, Defendant Somersalmi threatened to place Mr. Sexton under arrest for obstruction. At this point, Mr. Sexton exited the van. It was obvious to Defendant Somersalmi and Defendant Nassar that Mr. Sexton was recording them when he stepped out of his van. Mr. Sexton asked Defendant Somersalmi to back away from his vehicle.

Instead, Defendant Somersalmi and Defendant Nassar grabbed Mr. Sexton by both arms. While Mr. Sexton was helpless, Defendant Somersalmi and Defendant Nassar slammed Mr. Sexton to the ground. Defendant Somersalmi piled her bodyweight onto Mr. Sexton's arm. The body slam fractured Mr. Sexton's right humorous.

Defendant Somersalmi had interactions with Mr. Sexton previously and knew that he was someone who frequently criticized and filmed police activity. She had spoken with Mr. Sexton on the phone previously and knew his voice. Mr. Sexton's van was registered in his name and had been previously surveilled by Colorado Springs Police

Department officers. Defendant Somersalmi recognized Mr. Sexton, at the very least, from the time he stepped out of his van. This knowledge influenced Defendant Somersalmi's actions. Defendant Somersalmi recklessly escalated the situation with Mr. Sexton, and recklessly created any need to use force, because of his past activities criticizing and filming the police. Ultimately, Defendant Somersalmi used grossly excessive force against Mr. Sexton because Mr. Sexton was a known protester of police activity who often filmed the police.

Ms. Lueders continued to record the interaction, and she was critical of the officers and told them to get off of Mr. Sexton multiple times. Immediately after handcuffing Mr. Sexton on the ground, Defendant Somersalmi went after Ms. Lueders. Defendant Somersalmi pulled Ms. Lueders' hair, grabbed her right arm, and pushed her face up against the van, leaving her bruised and scarred. It was clear to Defendant Nassar that there was no basis for Defendant Somersalmi to use any force against Mr. Sexton. Defendant Nassar had the chance to intervene to stop Defendant Somersalmi's actions. Defendant Nassar actively chose not to take any action to intervene to de-escalate the situation or, at the very least, to prevent Defendant Somersalmi's from recklessly escalating the situation and creating any need to use force.

Mr. Sexton and Ms. Lueders remained in handcuffs for approximately forty-five minutes before they were released. Mr. Sexton's handcuffs were applied with his arms behind his back. While in handcuffs in the back of Defendant Somersalmi's police vehicle, Mr. Sexton complained about his shoulder hurting and did so specifically to Defendant Somersalmi. Despite this, none of the CSPD officers on-scene adjusted Mr.

Sexton's handcuffs to the front of his body to limit the pain he was experiencing or to prevent furth injury to his shoulder.

After they were released, Mr. Sexton and Ms. Lueders were left alone on the very property they had just been arrested and brutalized for being on. It was clear that their presence on the property did not justify the use of force against Mr. Sexton, and that Defendants used grossly excessive force against Mr. Sexton simply because he questioned Defendants and criticized their actions.

Ultimately, Defendant Somersalmi's use of force, and Defendant Nassar's decision to not intervene, were based on Mr. Sexton's speech, including his criticism of Defendants and his filming of Defendants' actions. After Defendants left, Mr. Sexton and Ms. Lueders went to the Penrose Hospital Emergency Room. At the hospital, Mr. Sexton was diagnosed with a fracture in his upper right humerus. This was confirmed by two subsequent X-rays and a CAT scan.

Mr. Sexton was charged with trespass, resisting arrest, and obstructing a peace officer simply because they recorded the police interaction and criticized Defendants Somersalmi and Nassar. The charges for resisting and obstruction were later dismissed by the district attorney.

After the incident, Mr. Sexton and Ms. Lueders filed a complaint about this incident with Internal Affairs in Colorado Springs. The Internal Affairs complaint did not result in any discipline for Defendants.

As a result of Defendants' conduct, Plaintiff Michael Sexton brings the following

legal claims:[3]

1. Excessive Force in violation of the 4th Amendment and pursuant to 42 U.S.C. § 1983 – Against Defendants Somersalmi and Nassar in their individual capacities.

2. Excessive Force in violation of Colo. Rev. Stat. § 13-21-131 – Violation of Colo. Const. Art. II, Section 7 – Against Defendants Somersalmi and Nassar in their individual capacities.

**b.     Defendants:**

Defendants deny that they used excessive force on Plaintiff Michael Sexton on April 2, 2021. On that date, at approximately 2:00 AM, Colorado Springs Police Sergeant Christine Somersalmi and Officer Eddie Nassar were dispatched to a parking lot behind Natural Grocers on South Nevada Avenue for a trespass in progress. A uniformed security officer for the private commercial development had called the police because the occupants of a van parked on the property were refusing to leave. The security officer described the man in the van as a heavy-set male in his thirties and described the occupants as very hostile.

Sgt. Somersalmi arrived at the scene before Ofc. Nassar. After speaking with the security officer, she approached the van in the dimly lit parking lot, knocked on one of its windows, and announced "Police Department, come on out." So set off a multi-minute verbal interaction between Sgt. Somersalmi and Plaintiff in which Plaintiff argued—

---

[3] Additional claims brought by Plaintiff were dismissed by the Court. [ECF #28]. Plaintiff reserves the right to appeal the dismissal of these claims.

through a window cracked open—that he was not trespassing. Plaintiff further told Sgt. Somersalmi that she would have to threaten him with arrest. He demanded to speak with Sgt. Somersalmi's supervisor. He refused to exit the vehicle despite repeated orders and despite Sgt. Somersalmi's declaration that he was under arrest for obstruction and trespassing. If he didn't come out, Sgt. Somersalmi warned, she would break the van's window and pull him out. All the while, Sgt. Somersalmi had no idea it was Mr. Sexton.

Plaintiff eventually jumped out of the vehicle and aggressively approached Sgt. Somersalmi with his phone raised and spotlight shining in Sgt. Somersalmi's eyes. A woman also jumped out of the van, swearing at Sgt. Somersalmi. Sgt. Somersalmi told Plaintiff he was under arrest and grasped his right wrist to put him in handcuffs. Plaintiff fought against Sgt. Somersalmi to try and free himself. She ordered him to stop resisting and to get on the on the ground, repeatedly. Plaintiff continued to pull away and actively resist arrest.

Ofc. Nassar had now arrived on scene and helped Sgt. Somersalmi pull Plaintiff to the ground, where Plaintiff continued to struggle and resist. Sgt. Somersalmi and Ofc. Nassar, together, were able to get Plaintiff's hands behind his back and into handcuffs.

Throughout Plaintiff's arrest, the woman was directly behind Sgt. Somersalmi, screaming and cursing at her. Sgt. Somersalmi feared the woman would attack her from behind. Sgt. Somersalmi ordered the woman to stay back. When the woman didn't comply, Sgt. Somersalmi advised her she was under arrest. The officers eventually

were able to handcuff the woman, despite her disobedience and active resistance. Additional Colorado Springs officers arrived on scene.

Not until Plaintiff was put into an officer's vehicle did Sgt. Somersalmi learn his identity. She acknowledged that they had had pleasant conversations on the phone on previous occasions. Plaintiff asked that he and the woman—Jazzmen Lueders—be released from handcuffs. Because Plaintiff and Ms. Lueders had calmed down and were compliant, they were.

An ambulance responded to the scene to evaluate Plaintiff, who was complaining that his shoulder hurt, but Plaintiff refused to be seen because he didn't want an ambulance bill. Sgt. Somersalmi offered several times to drive him to the hospital, but he refused. Because the jail was full, the officers served Plaintiff and Ms. Lueders with summonses and released them. Before officers left, Plaintiff was again told to leave the premises and was given several options where he could park his van to sleep.

Defendants expressly incorporate their Answer to the Amended Complaint and the defenses asserted therein. (Doc. 30).

## 4. UNDISPUTED FACTS

The following facts are undisputed:

1. At all times relevant to this First Amended Complaint, Plaintiff Michael Sexton was a citizen of the United States of America and a resident of the State of Colorado.

2. At all times relevant to this First Amended Complaint, Defendant Christine Somersalmi was a citizen of the United States and resident of the State of

   Colorado. At all relevant times, Defendant Somersalmi was acting within the scope of her official duties and employment and under color of state law in her capacity as a law enforcement officer for Colorado Springs, Colorado. Defendant Somersalmi is a peace officer employed by a local government.

3. At all times relevant to this First Amended Complaint, Defendant Eddie Nassar was a citizen of the United States and resident of the State of Colorado. At all relevant times, Defendant Nassar was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer for Colorado Springs, Colorado. Defendant Nassar is a peace officer employed by a local government.

## 5.  COMPUTATION OF DAMAGES

**Plaintiff claims the following:**

 (a) Declaratory, equitable, and injunctive relief, as appropriate;

 (b) Economic losses on all claims in an amount to be determined at trial;

 (c) Compensatory and consequential damages, including, but not limited to, damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

 (d) Punitive damages on all claims in an amount to be determined at trial;

 (e) Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

 (f) Pre- and post-judgment interest at the lawful rate;

 (g) An order directing the P.O.S.T. Board to permanently revoke Defendants

P.O.S.T. certification after a finding of civil liability, pursuant to Colo. Rev. Stat. § 24-31-904(1)(a)(II); and

    (h)    Any further relief that this court deems just and proper.

A more precise computation of Plaintiff's damages, to the extent Plaintiff's damages are subject to such computation, will be provided during the normal course of discovery, and will be determined by a jury in its sound discretion following a presentation of the evidence at trial in this matter. Damages for emotional distress, in particular, are not susceptible to the type of calculation contemplated by Rule 26(a)(1). "[C]ompensatory damages for emotional distress are necessarily vague and are generally considered a fact issue for the jury." *Williams v. Trader Pub. Co.*, 218 F.3d 481, 487 n.3 (5th Cir. 2000).

Punitive/Exemplary damages are sought based upon the egregious nature of the conduct of the defendants as set forth in the Complaint. Calculation of these damages and entitlements is premature and not susceptible to the type of calculation contemplated by Rule 26(a)(1).

**Defendants claim the following:**

Defendants dispute the nature and extent of Plaintiffs' claimed damages. Defendants are not seeking any damages from Plaintiffs but reserve the right to seek costs and fees to which they may be entitled by law.

### 6.    REPORT OF PRE-CONFERENCE DISCOVERY & MEETING UNDER Fed. R. Civ. P. 26(f)

    a.    Dates of Rule 26(f) meeting: **April 9, 2024.**

  b. Names of each participant and each party represented: Counsel for Plaintiff, andy Mcnulty met with Anne Turner, counsel for Defendants, by phone.

  c. Proposed changes, if any, in timing or requirement of disclosures under Fed.R.Civ.P. 26(a)(1):  See (d), below.

  d. Statement as to when Rule 26(a)(1) disclosures were made or will be made: **April 24, 2024.**

  e. The parties have not agreed to conduct informal discovery but will attempt to cooperate with informal requests for discrete documents to the extent feasible as the case unfolds.

  f. The parties agree to take all reasonable steps to reduce discovery and reduce costs.

  g. The parties anticipate that this case will involve a significant amount of electronically stored information.  The parties agree to produce all information in electronic form in order to reduce litigation costs. The parties agree that, with the exception of video (which shall be produced in an open-source format, such as any file extension accessible by VLC), electronic documents will be produced in PDF format, including those from proprietary database systems, but that native format will be produced upon request, where possible. The parties further agree to work cooperatively to avoid discovery disputes related to electronically stored information.

  h. The parties agree to cooperate regarding taking remote depositions by video conferencing where technically feasible and if necessary due to health restrictions. The

parties reserve the right to take party and key witness depositions in person if circumstances permit.

 i. Pursuant to Fed. R. Civ. P. 26(f), the parties have discussed the possibility for a prompt settlement of the case. The parties will report the result of any future settlement discussions to the Court as they deem necessary or useful.

## 7. CONSENT

All parties **have not** consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

 a. The parties agree to limit the number of depositions to 10 per side, inclusive of parties and experts. Defendants Somersalmi and Nassar, collectively, are one "side" of the litigation. The parties agree to limit the length of depositions to 7 hours unless a longer deposition is agreed to by the parties or ordered by the court.

 b. Each side, collectively, may serve 25 interrogatories, 25 requests for production, and 25 requests for admission on the other side.

## 9. CASE PLAN AND SCHEDULE

The plan and schedule must include the following items:

 a. Deadline for Joinder of Parties and Amendment of Pleadings**: The filing of amended and supplemental pleadings will be made pursuant to Fed. R. Civ. P. 15.**

 b. Discovery Cut-off: **January 28, 2025.**

 c. Dispositive Motion Deadline: **February 28, 2025.**

 d. Expert Witness Disclosure

  (1) Statement regarding anticipated fields of expert testimony, if any:

    a) <u>Plaintiff</u>: Plaintiff anticipates calling retained experts in the following possible fields: police practices, psychological damages, medical damages.

    b) <u>Defendants</u>: Defendants anticipate calling retained experts in the following possible fields: police practices, psychological damages, medical damages.

  (2) The parties shall be limited to a total of three (3) retained expert witnesses per side.

e. The parties shall designate all affirmative experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a) (2) on or before **September 16, 2024.**

f. The parties shall designate all rebuttal experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a) (2) on or before **October 30, 2024.**

e. Deposition Schedule:

| Name of Deponent* | Date of Deposition | Time of Deposition | Expected Length of |
|---|---|---|---|
| Michael Sexton | TBD | TBD | 7 hours |
| Christine Somersalmi | TBD | TBD | 7 hours |
| Eddie Nassar | TBD | TBD | 7 hours |
| Other individuals disclosed by the parties in their disclosures and discovery responses | TBD | TBD | __ hours |

    \* The Parties reserve the right to take additional depositions of persons identified in the Parties' disclosures and through the course of discovery.

    f.    Deadline for Interrogatories: All interrogatories must be served at least 30 days prior to the discovery cut-off.

    g.    Deadline for Requests for Production and Admission: All requests for production and requests for admission must be served at least 30 days prior to the discovery cut-off.

## 10. DATES FOR FURTHER CONFERENCES

    a.    Status conferences will be held in this case at the following dates and times: _____.

    b.    A final pretrial conference will be held in this case on _____ at o'clock _____. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING ISSUES

    a.    Statement of those discovery or scheduling issues, if any, on which counsel, after a good faith effort, were unable to reach an agreement: **None.**

    b.    Statement of anticipated length of trial to the jury: Three (3) days.

    c.    The Parties do not anticipate conducting any pretrial proceedings at the District Court's facilities in Colorado Springs or Durango, unless set by this Court.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.Colo.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.Colo.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

### 13. AMENDMENTS TO DISCOVERY AND SCHEDULING ORDER

The Scheduling Order may be altered or amended only upon a showing of good cause.

DATED this 1st day of May 2024.

BY THE COURT:

_____
Scott T. Varholak
United States Magistrate Judge

APPROVED:

| | |
|---|---|
| *s/ Andy McNulty* | *s/ Anne H. Turner* |
| Mari Newman | Anne H. Turner |
| Andy McNulty | Assistant City Attorney |
| NEWMAN | MCNULTY LLC | City of Colorado Springs |

| | |
|---|---|
| 1490 N. Lafayette Street, Suite 304<br>Denver, CO 80218<br>Telephone: 720-850-5770<br>Mari@Newman-McNulty.com<br>Andy@Newman-McNulty.com<br><br>*Attorneys for Plaintiff* | 30 S. Nevada Avenue, Suite 501<br>Colorado Springs, CO 80903<br>(719) 385-5909<br>Anne.turner@coloradosprings.gov<br><br><br>*Attorney for Defendants* |